Citation Nr: 1602624 
Decision Date: 01/28/16 Archive Date: 02/05/16

DOCKET NO. 13-09 509A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to service connection for a lumbar spine disability. 
 
2. Entitlement to service connection for a cervical spine disability.

3. Entitlement to an initial compensable evaluation for pseudofolliculitis barbae.


REPRESENTATION

Veteran represented by: North Carolina Division of Veterans Affairs


WITNESSES AT HEARING ON APPEAL

Veteran and Wife



ATTORNEY FOR THE BOARD

Anthony Vieux, Associate Counsel


INTRODUCTION

The Veteran served on active duty from December 1974 to June 1976.

This matter comes before the Board of Veterans' Appeals (Board) from July 2010 and March 2011 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina.

The Veteran and his wife testified before the undersigned Veterans Law Judge (VLJ) in an October 2015 video conference hearing; a transcript of the hearing is associated with the claims file.


FINDINGS OF FACT

1. The competent and credible evidence of record does not establish that the Veteran's current lumbar spine disability had its onset in or is related to the Veteran's active service. 
 
2. The competent and credible evidence of record does not establish that the Veteran's current cervical spine disability had its onset in or is related to the Veteran's active service.

3. The Veteran's service-connected pseudofolliculitis barbae does not cause disfigurement, nor does it involve 5 to 20 percent of the entire body or exposed areas, or require systemic therapy.



CONCLUSIONS OF LAW

1. The criteria for service connection for a lumbar spine disability have not been met. 38 U.S.C.A. §§ 1110, 1131, 5103 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2015).
 
2. The criteria for service connection for a cervical spine disability have not been met. 38 U.S.C.A. §§ 1110, 1131, 5103 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2015).

3. The criteria for the assignment of a compensable disability rating for pseudofolliculitis barbae have not been met. 38 U.S.C.A. §§ 1155, 5103 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.7, 4.10, 4.14, 4.21, 4.118, Diagnostic Code (DC) 7899-7806 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

VA has a duty to provide notice of the information and evidence necessary to substantiate a claim. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2015). April 2010 and September 2010 letters satisfied the duty to notify provisions.

VA also has a duty to provide assistance to substantiate a claim. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159(c). The Veteran's service treatment and personnel records have been obtained. Post-service private treatment records and VA treatment records have also been obtained. The Veteran was provided VA medical examinations (provided by QTC Services) in June 2010 and November 2010. The Board finds that the June 2010 and November 2010 examinations, along with the medical opinions, are sufficient evidence for deciding the claims. The reports are adequate as they are based upon consideration of the Veteran's relevant medical history and his lay contentions. Furthermore, the VA examiners reviewed the Veteran's claims file and provided reasoned rationales for their opinions. Thus, VA's duty to assist has been met.

The Veteran has been afforded a hearing before a VLJ in which he presented oral argument in support of his claims. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) (2015) requires that the VLJ who chairs a hearing fulfill two duties to comply with the above regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked.

Here, during the hearing, the VLJ asked specific questions directed at identifying whether the Veteran had symptoms meeting the schedular criteria for a compensable rating for pseudofolliculitis barbae and service connection for lumbar and cervical disabilities. Further, the VLJ specifically sought to identify any pertinent evidence not currently associated with the claims file. The VLJ held the record open for 60 days to allow the Veteran's representative to review the claims file and submit comments, and to afford the Veteran an opportunity to locate and submit additional evidence. To date no comments or additional evidence has been submitted. Neither the Veteran nor his representative has asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2), nor have they identified any prejudice in the conduct of the Board hearing. By contrast, the hearing focused on the elements necessary to substantiate the claims, and the Veteran, through his testimony, demonstrated that he had actual knowledge of the elements necessary to substantiate his claims. As such, the Board finds that, consistent with Bryant, the VLJ complied with the duties set forth in 38 C.F.R. § 3.103(c)(2).

Service Connection - Laws and Regulations

Service connection may be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred or aggravated in active military service. This means that the facts establish that a particular injury or disease resulting in disability was incurred coincident with service in the Armed Forces, or if preexisting such service, was aggravated therein. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). 

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Hickson v. West, 12 Vet. App. 247, 253 (1999); Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table).

In some circumstances, certain chronic diseases listed at 38 C.F.R. § 3.309(a), including arthritis, may be presumed to have been incurred in service if manifest to a compensable degree within one year from discharge from service, provided further that the rebuttable presumption provisions of 38 C.F.R. § 3.307 are also satisfied. 38 U.S.C.A. §§ 1112, 1113, 1133, 1137; 38 C.F.R. § 3.309.

For the showing of chronic disease in service, there are required a combination of manifestations sufficient to identify a disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word chronic. 38 C.F.R. § 3.303(b). Continuity of symptomatology is required only where the condition noted during service is not, in fact, shown to be chronic or when the diagnosis of chronicity may be legitimately questioned. Id. When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim. Id. However, the continuity and chronicity provisions of 38 C.F.R. § 3.303(b) only apply to the chronic diseases enumerated in 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013), overruling Savage v. Gober, 10 Vet. App. 488, 495-96 (1997) (applying 38 C.F.R. § 3.303(b) to a chronic disease not listed in 38 C.F.R. § 3.309(a) as "a substitute way of showing in-service incurrence and medical nexus").

In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and continuity of his current symptomatology. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis or to establish etiology if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson, 581 F.3d at 1316; Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau, 492 F.3d at 1376-77. 

The Board is charged with the duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997), cert. denied, 523 U.S. 1046 (1998); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). Indeed, in Jefferson v. Principi, 271 F.3d 1072 (Fed. Cir. 2001), the Federal Circuit, citing its decision in Madden, recognized that that Board had inherent fact-finding ability. Id. at 1076; see also 38 C.F.R. § 7104(a). Moreover, the Court has declared that in adjudicating a claim, the Board has the responsibility to weigh and assess the evidence. Bryan v. West, 13 Vet. App. 482, 488-89 (2000); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992).

As a finder of fact, when considering whether lay evidence is satisfactory, the Board may also properly consider internal inconsistency of the statements, facial plausibility, consistency with other evidence submitted on behalf of the veteran, and the veteran's demeanor when testifying at a hearing. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007); Caluza, 7 Vet. App. at 511.

Service Connection - Cervical Spine

Service treatment records (STR) reflect that in May 1976, the Veteran was seen for complaints on the right side of his neck after twisting it while working on his car. This was characterized as a muscle strain, and medication was provided. There are no other records of neck complaints in the STRs. The Report of Medical History the Veteran prepared in connection with his service discharge examination dated in June 1976, shows the Veteran did not report any neck pain, and denied ever having any other injury than those noted. Clinical evaluation at the time revealed no abnormalities of the neck.

With respect to the cervical spine, post-service records, which include documentation of orthopedic complaints in the 1990's, do not show the presence of any neck disability until 2010, more than 30 years after service, when the Veteran was diagnosed to have degenerative arthritis. Indeed, records dated prior to 2010, show that in 1999, the Veteran reported he had no longstanding medical problems and exercised on a regular basis. Even in 2006, the Veteran's neck was described as supple with a full range of motion. This history does not support the notion that the Veteran's cervical spine degenerative arthritis may be linked to service.

The Veteran was examined for VA purposes in connection with this matter in November 2010, when he was diagnosed to have degenerative arthritis. As to its relationship with service, the examiner concluded it was not related, observing the STRs reflected non-correlating pain, and the absence of records post-service reflecting a pain pattern. (It is understood by this that one would expect to see a pattern of medical treatment in the interval between service and the date of the examination if the current findings were related to service. In the absence of that, the conclusion is there is no link between current disability and service.). This opinion is further probative evidence against the claim, given that it was based on a personal interaction with the Veteran and a review of the relevant history, with which it comports.

For his part, the Veteran has contended he has had neck problems since service, and his mother wrote in a December 2014 statement, the Veteran complained of neck pain "from the time he was released from the Marines until now." These statements, however, are not consistent with the STRs that show no complaints at the time the Veteran separated from service. Indeed, he specifically denied having any problems, and physical evaluation at the time revealed no neck abnormalities. These statements are likewise not consistent with the records dated in the 1990's which fail to mention any neck complaints, and in fact show that in 1999, the Veteran denied any longstanding problems. As recently as 2006, his neck was described as supple. In view of this contradiction with the historical records, the Veteran's current statements in this regard, and those of his mother, are not considered probative.

The evidence also includes a November 2014 positive nexus opinion from the Veteran's treating physician. However, his opinion merely consists of a checked box next to the following sentences: 

One cannot say exactly how long this condition existed prior to the date of diagnosis or definitively state its cause. However, it is as likely as not that [the Veteran's] documented in-service Back and Neck injuries mark the onset, cause or contribute to his current Degenerative Arthritis of the Cervical Spine and Lumbar Spine.

The Board considers this opinion to be of limited probative value because of its format; the imprecision of the relationship described between current disability and service; and the lack of any rationale. See Bloom v. West, 13 Vet. App. 185, 187 (1999) (a medical opinion based on speculation, without supporting clinical data or other rationale, does not provide the required degree of medical certainty). A speculative medical opinion provides neither positive nor negative support for the Veteran's claims. Fagan v. Shinseki, 573 F.3d 1282, 1289 (Fed. Cir. 2009).

Lastly, to the extent the Veteran offers his own opinion his disability is related to service, the Veteran is not shown to have any specialized medical training which would enable him to diagnose his condition or offer a probative etiology opinion. Arthritis involves internal muscle and joint processes that cannot be identified or understood by mere personal observation. Accordingly, any such medical opinion expressed by the Veteran is not considered probative.

In summary, the greater weight of the evidence shows that while the Veteran had a single neck pain complaint in service, his current cervical spine arthritis was not present in service; it was not present within the first post service year; and it was not present until many years after service. It likewise is not shown to be related to any in-service disease or injury. Because the greater weight of the evidence is against the claim, a basis upon which to establish service connection has not been presented.

Service Connection - Lumbar Spine

STRs reflect that in December 1975, the Veteran was treated for complaints of back pain at the right lateral aspect of the lumbar area. It was noted there was no history of treatment for his complaint, and it appears the Veteran had full range of motion. Any diagnostic impression as may have been entered in the record is illegible. There are no other records of low back complaints in the STRs. The Report of Medical History the Veteran prepared in connection with his service discharge examination dated in June 1976, shows the Veteran denied then having or ever having recurrent back pain and denied ever having any other injury than those noted. Clinical evaluation at the time revealed no abnormalities of the spine.

With respect to the lumbar spine, post-service records do not show the presence of any back disability within one year after service. Indeed, these records show that he was initially diagnosed and treated for his current back disability in the 1990s. More than 16 years after service, in November 1992, a CT scan of the lumbar spine was obtained and revealed a large extruded disc fragment on the right at L5-S1. In December 1992, the Veteran's treating physician noted that the onset of his condition was two months prior. In January 1993, the Veteran underwent right L5-S1 limited laminectomy with excision of a protruded disk. Although a February 1993 private treatment record indicates that the Veteran was on disability, the benefits that the Veteran was allegedly receiving was not identified by the clinician. Further, the Veteran has not indicated that he is in receipt of disability benefits from the Social Security Administration. In fact, the Veteran was released to full employment on May 3, 1993.

The Veteran's condition greatly improved subsequent to undergoing lumbar spine surgery. As mentioned above, in 1999, the Veteran reported he had no longstanding medical problems and exercised on a regular basis. Even in 2006, the Veteran had full painless range of motion of all major muscle groups and joints. 

As set out above, the Veteran was examined for VA purposes in connection with this matter in November 2010, when he was diagnosed to have degenerative arthritis. As to its relationship with service, the examiner concluded, in conjunction with the cervical spine disability, it was not related to service, observing the STRs reflected non-correlating pain, and the absence of records post-service reflecting a pain pattern. This opinion is probative evidence against the claim, given that it was based on an examination of the Veteran and a review of the relevant history.

For his part, the Veteran has contended he has had back problems since service, and his mother wrote in the December 2014 statement, the Veteran complained of back pain "from the time he was released from the Marines until now." Further, the Veteran's wife testified at the hearing that the Veteran has had back problems since the early 1980s. These statements, however, are not consistent with the STRs that show no complaints at the time the Veteran separated from service. Indeed, he specifically denied having any problems, and physical evaluation at the time revealed no spine abnormalities. These statements are likewise not consistent with the records dated in the 1990s that indicate the onset of his current back disability was in 1992, which is more than 16 years after service. As recently as 2006, the Veteran had full painless range of motion of all major muscle groups and joints. In view of this contradiction with the historical records, the Veteran's current statements in this regard, and those of his mother and wife, are not considered probative.

As mentioned previously, the evidence also includes a November 2014 positive nexus opinion from the Veteran's treating physician, which the Board considers to be of limited probative value because of its format; the imprecision of the relationship described between current disability and service; and the lack of any rationale. 

Lastly, as explained previously, to the extent the Veteran offers his own opinion his disability is related to service, the Veteran is not shown to have any specialized medical training which would enable him to diagnose his condition or offer a probative etiology opinion, and thus any such medical opinion expressed by the Veteran is not considered probative.

In summary, the greater weight of the evidence shows that while the Veteran had a single back pain complaint in service, his current lumbar spine arthritis was not present in service; it was not present within the first post service year; and it was not present until many years after service. It likewise is not shown to be related to any in-service disease or injury. Because the greater weight of the evidence is against the claim, a basis upon which to establish service connection has not been presented.

Increased Rating - Pseudofolliculitis Barbae.

The Veteran disagrees with the initial rating assigned for pseudofolliculitis barbae. Further, the Veteran and his wife testified at the hearing that his condition has worsened. The Veteran also testified that his pseudofolliculitis barbae was painful and sometimes would swell.

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R., Part 4 (2015). Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1 (2015). Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the appellant working or seeking work. 38 C.F.R. § 4.2 (2015). Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7 (2015).

In general, when an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, consideration also must be given as to whether staged ratings should be assigned to reflect entitlement to a higher rating at any point during the pendency of the claim. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

Initially, it should be noted that pseudofolliculitis barbae is not a listed disability under the Rating Schedule, 38 C.F.R., Part 4. In this case, the RO has rated pseudofolliculitis barbae as noncompensable (0 percent), by analogy, under 38 C.F.R. § 4.118, DC 7899-7806 (2015), the code for dermatitis or eczema based upon the percentage of exposed and total body areas affected. See 38 C.F.R. § 4.27 (hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned; the additional code is shown after the hyphen).

When an unlisted disease, injury, or residual condition is encountered, requiring rating by analogy, the diagnostic code number will be "built-up" as follows: the first two digits will be selected from that part of the schedule most closely identifying the part, or system of the body involved, in this case, the skin, and the last two digits will be "99" for all unlisted conditions. Then, the disability is rated by analogy under a diagnostic code for a closely related disability that affects the same anatomical functions and has closely analogous symptomatology. 38 C.F.R. §§ 4.20, 4.27.

The Board notes that, during the entire appeal period, there has been no disfigurement of the head, face, or neck, and the disability is appropriately evaluated under the criteria for dermatitis or eczema under DC 7806.

Under DC 7806, a zero percent rating is warranted where the skin disability covers less than 5 percent of the entire body or less than 5 percent of the exposed areas affected; and no more than topical therapy was required over the past 12-month period. A 10 percent rating is warranted where the skin disability covers at least 5 percent, but less than 20 percent of the entire body, or at least 5 percent, but less than 20 percent of the exposed areas affected; or intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs were required for a total duration of less than six weeks during the past 12-month period.

Here, the Veteran's post-service treatment records do not show any systemic treatment for pseudofolliculitis barbae. In fact, the Veteran's treating physician noted in February 2008 that his skin did not have any ulcerations, suspicious lesions, or rashes. Further, physical examination in September 2009 revealed no ulcerations, suspicious lesions, or rashes.

In June 2010, the Veteran was provided a VA medical examination. The Veteran reported that his treatment within the past 12 months for pseudofolliculitis barbae consisted only of hydrocortisone cream, which is a topical corticosteroid. He reported that he had not used ultraviolet B therapy, intensive light therapy, psoralen and ultraviolet A therapy, or electron beam therapy for his skin condition. Examination revealed pseudofolliculitis barbae located on the beard area and at the posterior hairline. The characteristic of the pseudofolliculitis barbae was abnormal texture of less than six square inches. Nevertheless, there was no ulceration, exfoliation, crusting, disfigurement, tissue loss, induration, inflexibility, hypopigmentation, hyperpigmentation, or limitation of motion. The skin lesion coverage of the exposed area was 1 percent. Further, the skin lesion coverage relative to the whole body was 0.13 percent. The examiner also indicated that there was no scar present. 

The Veteran testified at the hearing that his doctor told him that to improve his pseudofolliculitis barbae condition he would need to stop shaving. The Veteran also stated that his condition worsens when he shaves daily rather than abstaining from shaving for a day in between shaves. 

The Veteran's testimony regarding his pseudofolliculitis barbae does not suggest a condition that requires a compensable rating. The Veteran testified that he has pseudofolliculitis barbae only in the beard area, which is the same area identified by the VA examiner. Further, the Veteran indicated that his treatment for pseudofolliculitis barbae only consisted of placing hot towels on his face before shaving and using hydrocortisone cream after shaving. Although the Veteran and his wife testified that his condition has worsened, their descriptions of his condition are consistent with the findings of the VA examiner. Therefore, great probative weight is assigned to the examiner's opinion and findings, and another examination is not warranted.

Corticosteroids are anti-inflammatory drugs that are synthetic derivatives of the natural steroid, cortisol, which is produced by the adrenal glands. They are called systemic steroids if taken by mouth or given by injection as opposed to topical corticosteroids which are applied directly to the skin. Corticosteroids that are applied topically are not considered systemic for VA purposes. A systemic treatment is one pertaining to or affecting the body as a whole, whereas a topical treatment pertains to a particular surface area, such as a topical cream applied to a certain area of the skin and affecting only the area to which it is applied. See Dorland's Illustrated Medical Dictionary 1865, 1940 (32d ed. 2012). 

Although the Veteran's pseudofolliculitis barbae has required treatment with hydrocortisone, a topical corticosteroid, this treatment is not considered a systemic corticosteroid for VA purposes as contemplated by DC 7806.

The Board finds the noncompensable rating for pseudofolliculitis barbae to be appropriate. There is no medical evidence indicating that the Veteran's pseudofolliculitis affects at least 5 percent of the entire body or 5 percent of his exposed areas. See 38 C.F.R. § 4.118, DC 7806. There is also no evidence that the Veteran requires systemic therapy or treatment by immunosuppressive medication of less than 6 weeks during a 12-month period of time, as required under the criteria for a 10 percent evaluation. See id. Further, the Veteran's testimony at the hearing reflected conservative treatment for pseudofolliculitis barbae.

The Board has considered whether any other diagnostic codes would afford the Veteran a higher rating for his pseudofolliculitis barbae. See Butts v. Brown, 5 Vet. App. 532 (1993); DCs 7800-7833. The other diagnostic codes are either inapplicable or would not be advantageous to the Veteran.

Under DC 7800, a 10 percent evaluation is warranted when there is one characteristic of disfigurement of the head, face, or neck. In Note (1) under DC 7800, the eight characteristics of disfigurement are: a scar 5 or more inches (13 or more cm.) in length, scar at least one-quarter inch (0.6 cm.) wide at its widest part, surface contour of scar elevated or depressed on palpation, scar adherent to underlying tissue, skin hypo-or hyperpigmented in an area exceeding six square inches, skin texture abnormal (irregular, atrophic, shiny, scaly, etc.) in an area exceeding six square inches, underlying soft tissue missing in an area exceeding six square inches, and skin indurated and inflexible in an area exceeding six square inches.

In this case, there is no evidence of any characteristics of disfigurement required under 38 C.F.R. § 4.118, DC 7800. In this respect, although the VA examiner noted abnormal texture, it did not exceed 6 square inches. Thus, the Board finds that the Veteran is not entitled to a compensable disability rating for his service-connected pseudofolliculitis barbae under DC 7800.

In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321. The Court has set out a three-part test, based on the language of 38 C.F.R. § 3.321(b)(1), for determining whether a veteran is entitled to an extraschedular rating: (1) the established schedular criteria must be inadequate to describe the severity and symptoms of the claimant's disability; (2) the case must present other indicia of an exceptional or unusual disability picture, such as marked interference with employment or frequent periods of hospitalization; and (3) the award of an extraschedular disability rating must be in the interest of justice. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). 

The Board finds that the rating criteria contemplate the Veteran's pseudofolliculitis barbae, such as the Veteran's service-connected pseudofolliculitis barbae is productive of abnormal texture, a manifestation that is contemplated in the rating criteria. The rating criteria are therefore adequate to evaluate the Veteran's pseudofolliculitis barbae and referral for consideration of extraschedular rating is not warranted. The Board has considered whether the Veteran is entitled to "staged" ratings for his service-connected pseudofolliculitis barbae. Based upon the record, we find that at no time during the claims period has the disability on appeal been more disabling than as currently rated under the present decision of the Board.

Additionally, the Court has held that a request for a total disability evaluation based upon individual unemployability (TDIU), whether expressly raised by a claimant or reasonably raised by the record, is an attempt to obtain an appropriate rating for disability or disabilities, and is part of a claim for increased compensation. However, there must be cogent evidence of unemployability in the record. See Rice v. Shinseki, 22 Vet. App. 447 (2009), citing Comer v. Peake, 552 F.3d 1362 (Fed. Cir. 2009). In the instant case, the VA examiner indicated that the Veteran was unable to hold or attain jobs that require a clean-shaven face. Nevertheless, the Veteran testified at the hearing that he works as a professional real estate salesman, which requires shaving. The record does not suggest, nor does the Veteran contend, that his service-connected pseudofolliculitis barbae precludes him from obtaining and maintaining substantially gainful employment. Therefore, a claim for TDIU has not been raised.

The preponderance of the evidence is against the increase rating claim for pseudofolliculitis barbae. There is no doubt to be resolved, and a compensable rating for pseudofolliculitis barbae is not warranted. See 38 C.F.R. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990).


ORDER

Service connection for a lumbar spine disability is denied.

Service connection for a cervical spine disability is denied. 

An initial compensable evaluation for pseudofolliculitis barbae is denied.




____________________________________________
MICHAEL E. KILCOYNE
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs